**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NIKOLAY OTCHKOV,<br><br>        Plaintiff,<br><br>v.<br><br>ALAN EVERETT, in his official and individual capacities as Director of the Arizona Department of Liquor Licenses and Control; Former Director of the Arizona Department of Liquor and Licenses Control JERRY OLIVER Sr., in his official and individual capacities; OSCAR CORTEZ in his official and individual capacities as an officer in the Phoenix Police Department; CITY OF PHOENIX; Attorney JESS LORONA, and the law firm LORONA, DUCAR & STAINER LTD.,<br><br>        Defendants. | No. 12-CV-02042-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Defendant Oscar Cortez's and the City of Phoenix's (collectively "the City Defendants") Motion to Dismiss (Doc. 12), *pro se* Plaintiff Nikolay Otchkov's Motion to Strike the Motion to Dismiss (Doc. 18), and Plaintiff's Motion to Strike the City Defendants' reply to Plaintiff's motion to strike (Doc. 27). The Court grants the City Defendants' Motion to Dismiss and denies Plaintiff's motions for the following reasons.

**I.    BACKGROUND**

In 2000, Plaintiff opened and began operating a restaurant and sports bar called

"Famous Sam's." (Doc. 1 at 3). On June 14, 2007, City of Phoenix officials, including Defendant Cortez of the Phoenix Police Department, conducted an inspection of Famous Sam's. (*Id*. at 4). As a result of the inspection, Defendant Cortez issued Plaintiff an "Arizona Traffic Ticket and Complaint" for no game center license, operating games of chance, and operating untagged coin operated games. (*Id*.). Plaintiff was allegedly not handcuffed or detained but was read his Miranda rights. (*Id*.). Plaintiff was ordered to appear in the City of Phoenix Municipal Court on June 28, 2007. (*Id*.). Plaintiff appeared in Court but was allegedly told by the court clerk that no complaint had been filed against him and none existed against him in the court file. (*Id*.).

In 2007, Plaintiff changed the name of the restaurant to "Big Nixx." (*Id*. at 3). In January 2008, the Arizona State Liquor Board (the "Board") audited Big Nixx and found multiple violations of Arizona law. (*Id*.). Plaintiff was required to surrender his current liquor license and acquire a series 6 liquor license. (*Id*.). In front of Phoenix City Hall, on January 24, 2008, Defendant Cortez allegedly told Plaintiff something like, "You Bulgarians never gonna learn to obey laws and that is why you never gonna get a license in this City." (*Id*.).

To acquire a series 6 license Plaintiff had to enter the Arizona Liquor License Lottery. (*Id*.). On May 4, 2008, Plaintiff was randomly selected in the lottery, which allowed Plaintiff to apply for a series 6 license with the Department of Liquor Licenses and Control ("DLLC"). (*Id*.). To obtain a series 6 license, Plaintiff was required to apply with the DLLC and pay a "nonrefundable fifty percent (50%) deposit of the Fair Market Value" of his series 6 license which was "$55,834.00." (*Id*.). Plaintiff paid the $55,834.00 "nonrefundable deposit" to the DLLC. (*Id*.). Plaintiff claims he was never warned that DLLC would keep his "nonrefundable deposit" in the case his application was disqualified by the Board. (*Id*.). Plaintiff also filed the application with the DLLC. (*Id*. at 4).

In the application, one question asks "Have you ever been detained, cited, arrested, indicted or summoned into court for violation of any law or ordinance?" (Doc. 1-1 at 13).

Plaintiff answered the question by saying he was warned in June 2007 for possible game violations. (*Id.*). Another question asks "Have you or an entity in which you have held ownership, been an officer, member, director or manager, ever had a business, professional or liquor application or license rejected, denied, revoked, suspended or fined in this or any other state?" (*Id.*). In answering the question, Plaintiff failed to disclose some violations and the fine he was assessed for violations. (*Id.*).

In July 2008, the Phoenix City Council recommended disapproval of Plaintiff's application for a series 6 license based on information provided by Defendant Cortez and the Phoenix Police Department regarding Plaintiff's past violations. (Doc. 1 at 4). Plaintiff alleges that Defendant Cortez falsely accused Plaintiff of falsifying his series 6 license application. (*Id.*).

In order to resolve the issues presented by the Phoenix City Council's recommendation, the Board set a hearing. (*Id.*). Plaintiff retained assistance of attorney Jerry Lewkowitz for the hearing. (*Id.*). The hearing was held on December 8, 2008. (*Id.*).

On December 8, 2008, Defendant Cortez also allegedly entered Big Nixx and ordered the customers to leave and the bartender to close the restaurant. (*Id.*).

On December 19, 2008, the Board denied Plaintiff's application for a series 6 liquor license, allegedly solely on the basis of the information provided by Defendant Cortez—that Plaintiff had been arrested and falsified his application. (*Id.* at 5). As a result of his application denial, Plaintiff forfeited the $55,834.00 "nonrefundable deposit." (*Id.*). Plaintiff did not appeal the Board's decision because Lewkowitz advised Plaintiff that an appeal would be futile because the City of Phoenix based its recommendation on Defendant Cortez's information. (*Id.*).

Plaintiff contacted Defendant Oliver, the former director of the Arizona DLLC, and apparently asked for his nonrefundable deposit back. Oliver refused to return the deposit and advised Plaintiff to seek legal counsel in order to dispute the issue in court. (*Id.*). In March 2010, Plaintiff hired Defendant Lorona to pursue a claim in an attempt to get the deposit back. (*Id.*).

1    On June 28, 2010, the DLLC sent a letter to Plaintiff signed by Defendant Alan
2 Everett, the Director of the DLLC, re-asserting that the DLLC would not refund the
3 deposit that Plaintiff paid in May 2008 because the deposit was nonrefundable. (Doc. 1-1
4 at 25). Plaintiff alleges Defendant Lorona expressed to Plaintiff that this letter was an
5 acknowledgment by the DLLC of wrongful acts and that the letter would be useful
6 inculpatory evidence against the DLLC in a forth coming section 1983 claim. (Doc. 1 at
7 5).

8    In September 2010, Defendant Lorona advised Plaintiff that there may be some
9 issues preventing him from being successful on a claim under section 1983. (*Id.* at 6). In
10 December 2010, Plaintiff filed a complaint with another judge in this Court under 42
11 U.S.C. § 1983 against the State of Arizona, the DLLC, City of Phoenix, and the Police
12 Department. (Doc. 1-1 at 29-39). The complaint was eventually dismissed for failure to
13 serve the defendants. In January 2011, Defendant Lorona and his law firm informed
14 Plaintiff that the firm would no longer represent Plaintiff because Lorona had determined
15 that Plaintiff had no legal claim. (*Id.*).

16    Plaintiff alleges he was deceived and betrayed by Lewkowitz and Defendant
17 Lorona because they allegedly acted in favor of the DLLC and the City of Phoenix. (*Id.*).
18 On June 16, 2011, Plaintiff sent a letter to Defendant Everett which was referred to the
19 Arizona Department of Administration Risk Management Division. (Doc. 1-1 at 41). The
20 Department sent a letter back to Plaintiff on September 27, 2011, denying the claims
21 Plaintiff presented and explaining that an investigation into Plaintiff's application denial
22 had revealed that Plaintiff's application was handled and processed in accordance with
23 established procedures and Arizona law. (*Id.*).

24    On September 26, 2012, Plaintiff filed a complaint (the "Complaint") in this Court
25 alleging five counts against Alan Everett, Director of the Arizona DLLC, Jerry Oliver Sr.,
26 former Director of the Arizona DLLC, Oscar Cortez of the Phoenix Police Department,
27 the City of Phoenix, and Attorney Jess Lorona, and the law firm Lorona, Ducar & Stainer
28 Ltd. (Doc. 1). On November 21, 2012, the City Defendants filed the pending Motion to

- 4 -

1  Dismiss (Doc. 12). Plaintiff then made a single filing consisting of a Response to the
2  Motion to Dismiss and the pending Motion to Strike the Motion to Dismiss ("First Motion
3  to Strike") on December 10, 2012 (Doc. 18).

4        The City Defendants then filed a Response to Plaintiff's First Motion to Strike
5  (Doc. 20) and Plaintiff filed a Reply to the City Defendants' Response to the First Motion
6  to Strike (Doc. 23).

7        The City Defendants also filed a Reply to Plaintiff's Response to the Motion to
8  Dismiss ("City Defendants' Reply") (Doc. 25). Subsequently, Plaintiff filed the pending
9  Motion to Strike the City Defendants' Reply ("Second Motion to Strike") (Doc. 27). The
10 City Defendants filed a Response to Plaintiff's Second Motion to Strike (Doc. 28) and
11 Plaintiff filed a Reply to the City Defendants' Response to the Second Motion to Strike
12 (Doc. 30).

13 **II.     PLAINTIFF'S FIRST AND SECOND MOTIONS TO STRIKE**

14       As an initial matter, the Court will address and deny Plaintiff's motions to strike.
15 In order to explain this conclusion, the Court endeavors to make sense of the multiple
16 filings Plaintiff has given the Court. Plaintiff and the City Defendants have made nine
17 separate filings concerning the Motion to Dismiss (Docs. 12, 18, 20, 23, 25, 27, 28, 30, &
18 31). Three of these filings are the pending motions: the Motion to Dismiss, the First
19 Motion to Strike, and the Second Motion to Strike (Docs. 12, 18, & 27). The merits
20 concerning the Motion to Dismiss are only addressed in the Motion to Dismiss (Doc. 12),
21 Plaintiff's reply to the response to Plaintiff's First Motion to Strike (Doc. 23), and the City
22 Defendants' reply to Plaintiff's response to the Motion to Dismiss (Doc. 25).

23       In Plaintiff's reply to the City Defendants' response to the Second Motion to
24 Strike (Doc. 30 at 1), Plaintiff argues that he "addressed in part the 'substance' of [City
25 Defendants'] arguments in his Reply (Doc.#22) enough to withstand their motion to
26 dismiss." However, this "Reply (Doc.#22)" is Plaintiff's response to Defendant Alan
27 Everett's Motion to Set Aside default (Doc. 19). While Everett is a Defendant in this
28 case, his arguments in the Motion to Set Aside default (Doc. 19) are entirely separate and

unrelated to the City Defendants' Motion to Dismiss (Doc. 12).

Nevertheless, the Court recognizes that Plaintiff is a *pro se* litigant and the Court will construe Plaintiff's pleadings liberally, up to a point. Plaintiff has raised no valid reason to strike the City Defendants' filings. In an attempt to address the merits of Plaintiff's claims and the City Defendants' arguments against them, the Court will deny Plaintiff's repeated motions to strike and consider all arguments made for and against the City Defendants' Motion to Dismiss.

### III.     THE CITY DEFENDANTS' MOTION TO DISMISS (Doc. 12)

In the Motions to Dismiss, the City Defendants have moved to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b). (Doc. 12 at 1). "A motion under Fed.R.Civ.P. 12(b)(6) to dismiss for failure to state a claim can be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). In deciding a motion to dismiss under Rule 12(b)(6), a court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, courts do not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In the Complaint, Plaintiff alleges five claims against defendants. (Doc. 1). Plaintiff makes one state law tort claim for intentional infliction of emotional distress in Count Five (*id.* at 9-10) and appears to invoke 42 U.S.C. § 1983 as the general basis for Counts One through Four (*id.* at 6-9). Section 1983 is not a source of substantive rights on its own. *Graham v. Connor*, 490 U.S. 386, 393-394 (1989). Section 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Id.* at 394 (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). "To make out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal

statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) (citing *Smith v. Cremins*, 308 F.2d 187, 190 (9th Cir. 1962)).

The City Defendants argue that Plaintiff's allegations fail to state claims upon which relief can be granted because the claims are 1) barred by the statute of limitations, 2) barred by the Rooker-Feldman doctrine, 3) barred because Plaintiff has not stated a valid claim under 42 U.S.C. § 1983, and 4) barred because Plaintiff has not complied with state law. (Doc. 12). As the Court finds resolution of the statute of limitations issue to be dispositive in this case, the Court will not address the other issues raised by the City Defendants.

### A. Statute of Limitations

The City Defendants argue that the limitations period for Plaintiff's claims expired on December 19, 2010, and Plaintiff's Complaint was filed on September 26, 2012. "Dismissal on statute of limitations grounds can be granted pursuant to Fed.R.Civ.P. 12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (quoting *Vaughan v. Grijalva*, 927 F.2d 476, 478 (9th Cir. 1991)); *see also Jablon*, 614 F.2d at 682 ("When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." (citing *Leone v. Aetna Casualty & Surety Co*., 599 F.2d 566 (3rd Cir. 1979)).

"State law governs the statute of limitations period for § 1983 suits." *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (citing *Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999)). "For actions brought pursuant to 42 U.S.C. § 1983, Federal courts apply the statute of limitations for personal injury actions of the state in which the claim arises." *Myers v. Ariz. Health Care Cost Containment Sys. (AHCCS)*, 984 F. Supp. 1255, 1256 (D. Ariz. 1996) *aff'd sub nom. Myers v. Ariz. Health Care Cost Containment Sys*., 131 F.3d 147 (9th Cir. 1997) (citing *Krug v. Imbordino*, 896 F.2d 395, 396–97 (9th Cir.1990)). For

personal injury actions "[i]n Arizona, the applicable statute provides for a limitations period of two years from the date the cause of action accrues." *Id*. (citing A.R.S. § 12–542).

"To determine the timeliness of a claim, a court must establish whether a plaintiff has alleged 'discrete acts' that would be unconstitutional occurring within the limitations period." *Normandeau v. City of Phx.*, 516 F. Supp. 2d 1054, 1065 (D. Ariz. 2005) (citing *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002)). "But in borrowing a state statute of limitations for a federal cause of action, 'we borrow no more than necessary.'" *TwoRivers*, 174 F.3d at 991 (quoting *West v. Conrail*, 481 U.S. 35, 39–40 (1987)). "Consistent with this maxim, federal, not state, law determines when a civil rights claim accrues. Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id*. (citations omitted).

In this case, the City Defendants argue that on the face of the Complaint the last discrete act alleged to have been taken by either the City of Phoenix or Cortez was on December 19, 2008. (Doc. 12 at 3-4). On December 8, 2008, according to the Complaint, Cortez closed Big Nixx and ordered customers to leave because he was closing the restaurant. (Doc. 1 at 4). Also on December 8th, the Arizona State Liquor Board held a hearing to determine whether or not to grant Plaintiff a series 6 license because the Phoenix City Council had recommended disapproval of Plaintiff's liquor license application. (*Id*.). Following the hearing, on December 19th the Board concluded that Plaintiff did not qualify for a series 6 liquor license. (*Id*. at 5). Plaintiff alleges Cortez's fabrications of criminal charges supported by other lies were the sole basis for the Board's conclusion. (*Id*. at 4). As a result of the Board's denial, Plaintiff forfeited the $55,834 admittedly "nonrefundable" deposit that Plaintiff paid toward being given his series 6 liquor license. (*Id*. at 3, 5).

On the basis of these facts, Plaintiff goes on to allege: that Cortez is liable in Count One for "conspiracy" with other defendants to deprive Plaintiff of "property and privilege" without "due process of law" in violation of the "Fourteenth Amendment to the

1 Constitution" (*id.* at 6-7); that City Defendants are both liable in Count Two for causing
2 Plaintiff's "loss of property, loss of privilege, loss of business and income and very
3 serious health issues in violation of [the] First Amendment" (*id.* at 7-8); that Cortez is
4 liable again in Count Three for "conspiracy" with other defendants to deprive Plaintiff "of
5 property and privileges through deception and fraud . . . in violation of [the] First, Fourth
6 and Fourteenth Amendments" (*id.* at 8); that City Defendants are both liable in Count
7 Four for "ethnic profiling" and depriving Plaintiff of "his rights to equal protection of all
8 the laws" and depriving Plaintiff of "his right to his property" and "due process of law"
9 "in violation of the Fourth and Fourteenth Amendments" (*id.* at 8-9); and that Cortez is
10 liable in Count Five for "intentionally and willfully inflict[ing] emotional distress on
11 Plaintiff" (*id.* at 9-10).

12       The City Defendants contend that these claims are barred by the two year statute
13 of limitations because the last discrete acts that enabled Plaintiff to know or gave him
14 reason to know of any injury caused by the City Defendants occurred on December 19,
15 2008—when the Board denied Plaintiff's liquor license. (Doc. 12 at 2-4).

16       **1.**    **Continuing Violation Theory**

17       Plaintiff contends that the "continuing wrong doctrine" tolls the two year statute of
18 limitations on all of his claims. (Doc. 23 at 3-4). "In actions like this one, where the
19 federal courts borrow the state statute of limitations, we also borrow the forum state's
20 tolling rules." *TwoRivers*, 174 F.3d at 992 (citing *Hardin v. Straub*, 490 U.S. 536, 539
21 (1989)). Plaintiff explains that his right to sue did not accrue until September 27, 2011,
22 when the Arizona Department of Administration Risk Management Division informed
23 Plaintiff that his "application for a liquor license was handled and processed in accordance
24 with established procedures and the Arizona Revised Statutes." (Doc. 1-1 at 41).

25       The continuing violation theory, which applies to section 1983 claims, allows a
26 plaintiff to seek relief for events outside the limitations period. *Knox v. Davis*, 260 F.3d
27 1009, 1013 (9th Cir. 2001). The Supreme Court addressed the continuing violations
28 doctrine in the context of Title VII violations in *National R.R. Passenger Corp. v.*

*Morgan*, 536 U.S. 101 (2002).  Reviewing a Ninth Circuit decision, the Supreme Court noted that the Ninth Circuit recognized two ways to demonstrate a continuing violation under the doctrine "allowing courts to consider conduct that would ordinarily be time barred 'as long as the untimely incidents represent an ongoing unlawful employment practice.'"  *Nat'l. R.R. Passenger Corp.*, 536 U.S. at 107 (quoting *Morgan v. National R.R. Passenger Corp.*, 232 F.3d 1008, 1014 (9th Cir. 2000)).  The Supreme Court observed that Ninth Circuit jurisprudence permitted a plaintiff to establish a continuing violation either by showing: (1) a "serial violation," where the alleged acts of discrimination outside the limitations period are demonstrated to be sufficiently related to similar acts within the limitations period; or (2) a "systemic violation" resulting from a "systemic policy or practice of discrimination that operated, in part, within the limitations period . . . ."  *Id*. (quoting 232 F.3d at 1015-16).  The Supreme Court rejected the "serial violation" basis for a continuing violation claim, holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Id*. at 113.  A "mere continuing impact from past violations is not actionable."  *Knox*, 260 F.3d at 1013 (quoting and citing numerous authorities).  The Ninth Circuit in *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002) applied *Morgan* to a section 1983 claim based on discrete time-barred acts.

In this case, Plaintiff's argument that the statute of limitations was tolled because of the continuing violation doctrine is without merit.  In arguing that the City Defendants' actions fall within the limitations period, Plaintiff does not allege that the City Defendants have committed discrete illegal actions after December 2008.  Instead, the gravamen of Plaintiff's claim is that the impacts on him from their actions, such as the Arizona Department of Administrations letter in September 2011, are themselves discrete illegal acts.  As set forth above, discrete illegal acts do not escape the statute of limitations challenge simply because they are related to act allowed in timely filed charges.  Nat'l. R.R. Passenger Corp., 536 U.S. at 113.  Moreover, the continuing impacts from past

violations of section 1983 are not actionable. *Knox*, 260 F.3d at 1013 (citing *Abramson v. Univ. of Haw.*, 594 F.2d 202, 209 (9th Cir. 1979)). *See also Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) ("[a] continuing violation is occasioned by unlawful acts, not by continual ill effects from an original violation. . . . Continuing non-employment resulting from an original action is not a continuing violation.").

Regarding Plaintiff's claims in Counts Two, Four, and Five, for fraudulent misrepresentation and ethnic profiling against the City Defendants and for the state law tort claim against Cortez, Plaintiff has not alleged that the City Defendants have done anything further to him since the Board denied his license application. Instead, it is clear from the Complaint that Plaintiff knew of his alleged injury no later than December 2008. In fact, Plaintiff filed a complaint with another judge in this Court on December 3, 2010 (Doc. 1-1 at 29-39), that was dismissed for failure of service, alleging most of the claims asserted here against the City Defendants. Thus, the two-year statute of limitations period expired several years prior to the date Plaintiff filed this Complaint. Accordingly, the Court finds that each claim alleged in the Complaint against the City Defendants is time-barred.

### 2. Continuing Conspiracy Theory

With respect to Counts One and Three in Plaintiff's Complaint, Plaintiff appears to argue that Cortez and other defendants engaged in a conspiracy to deprive Plaintiff of his constitutional rights. (Doc. 1 at 7-8). Even if Counts One and Three were not barred under the continuing violation theory, the Court would still dismiss these counts because this argument also has no merit. The Ninth Circuit has determined that the "last overt act" doctrine applies to the accrual of civil conspiracies for limitations purposes. *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986) ("[i]njury and damage in a civil conspiracy action flow from the overt acts, not from 'the mere continuance of a conspiracy.'") (citations omitted); *Compton v. Ide*, 732 F.2d 1429, 1432 (9th Cir. 1984), abrogated on other grounds by *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987). Under the last overt act doctrine, the injury and damage in a civil

conspiracy action flows from the overt acts, not from the mere continuance of a conspiracy, and the cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff. *Id*. (holding that a plaintiff may recover only for the overt acts that specifically were alleged to have occurred within the limitations period).

In this case, the last overt acts that Plaintiff has alleged against the City Defendants occurred on December 19, 2008. Accordingly, Plaintiff's claims of conspiracy against City Defendants that were filed on September 26, 2012 are far outside the expiration of the statute of limitations. All of the Plaintiff's claims against the City Defendants are barred by the statute of limitations. Therefore, the Court will grant the City Defendants' Motion to Dismiss because Plaintiff has failed to state a claim against the City Defendants upon which relief can be granted.

### B. *Respondeat Superior* Theory of Liability is not Valid in a Section 1983 Claim

Even if Plaintiff's claims against the City of Phoenix were not barred by the statute of limitations, the Court would still be compelled to grant the City Defendants' Motion to Dismiss the City of Phoenix. The only two claims against the City of Phoenix in the Complaint are Counts Two and Four—for violating section 1983 and respectively causing Plaintiff's "loss of property, loss of privilege, loss of business and income and very serious health issues in violation of [the] First Amendment" (Doc. 1 at 7-8) and for "ethnic profiling" and depriving Plaintiff of "his rights to equal protection of all the laws" and depriving Plaintiff of "his right to his property" and "due process of law" "in violation of the Fourth and Fourteenth Amendments" (*id*. at 8-9). Plaintiff alleges that the "City of Phoenix is liable for the actions of Defendant Detective Cortez under the doctrine of *respondeat superior*." (*Id*. at 8).

The United States Supreme Court has explicitly held "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory" "solely because [the municipality] employs a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Therefore, simply because the City of Phoenix employs Officer

1  Cortez it cannot be held liable under *respondeat superior.* Municipalities, however, can
2  be sued under section 1983 "for constitutional deprivations visited pursuant to
3  governmental 'custom' even though such a custom has not received formal approval
4  through the body's official decision making channels." *Id.* at 690-691; *see also Oviatt By*
5  *& Through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) ("[O]nly deprivations
6  visited pursuant to municipal 'custom' or 'policy' . . . lead to municipal liability.")
7  (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 818 (1985)).

       In order for the City of Phoenix to be liable under section 1983 for its policies and customs, Plaintiff "must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt*, 954 F.2d at 1474 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).  The Court finds Plaintiff's allegations in Counts Two and Four are wholly inadequate to meet these requirements and therefore insufficient to meet the requirements of Federal Rule of Civil Procedure 8(a)(2).

       Plaintiff has not alleged a single fact against the City of Phoenix.  Plaintiff has merely made the conclusory statement that the City "is liable for the actions of Defendant Detective Cortez under the doctrine of *respondeat superior.*"  (Doc. 1 at 8).  Plaintiff has not alleged that the City of Phoenix had a policy, Plaintiff has not explained how such a policy amounts to deliberate indifference to Plaintiff's constitutional rights, nor has Plaintiff explained or alleged any facts to show how the policy was the moving force behind any constitutional violation.  Consequently, Plaintiff's allegations against the City of Phoenix do not meet federal pleading standards.

       **C.**     **Count Five Against Defendant Cortez is also Barred by A.R.S. § 12-821.01**

       Even if Plaintiff's claims against Defendant Cortez were not barred by the statute of limitations the Court would still be compelled to dismiss Defendant Cortez from Count Five.  Plaintiff's Complaint makes a state law claim for intentional infliction of emotional

1  distress in Count Five against Cortez.  Plaintiff claims Officer Cortez and the other
2  individual defendants intentionally and willfully inflicted emotional distress on Plaintiff
3  by violating Plaintiff's constitutional rights.  (Doc. 1 at 9).  This claim against Cortez,
4  however, is barred by A.R.S. § 12-821.01, which requires a claimant to provide notice of
5  claim to a public entity or public employee within one hundred eighty (180) days after the
6  cause of action accrues.[1]  Claims that do not comply with this statute are barred and no
7  action may be maintained.  A.R.S. § 12-821.01(A); *see also Crum v. Superior Court*, 922
8  P.3d 316, 317 (Ariz. Ct. App. 1996).  As discussed above, *see supra* Section III.A, the
9  Complaint alleges the action for Plaintiff's claims against Cortez accrued on December 8,
10 2008.  Plaintiff did not file his Complaint until September 26, 2012.  Even if the Court
11 were to agree with Plaintiff's argument that the action accrued on September 27, 2011
12 (Doc. 23 at 3), Plaintiff still filed his Complaint a year later.  Therefore, under either the
13 Court's date of accrual or Plaintiff's, Count Five would still be barred by A.R.S. § 12-
14 821.01.

## IV.     LEAVE TO AMEND

The Court will not grant Plaintiff leave to amend the Complaint with regard to the City Defendants.  Plaintiff has not amended nor sought leave to amend his Complaint as a matter of right under Rule 15 of the Federal Rules of Civil Procedure.  Because the twenty-one day time frame to file an amendment following a motion to dismiss has expired, Plaintiff has lost his right to amend the Complaint as a matter of course.  Fed. R. Civ. P. 15(a)(1).  While previous precedent from the Ninth Circuit Court of Appeals

---

[1] A.R.S. § 12-821.01.
   A. Persons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. The claim shall contain facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount. Any claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.
   B. For purposes of this section, a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage.

1 instructed that district courts should grant leave to amend *sua sponte* when granting a motion to dismiss, the Court of Appeals has recently called that precedent into question in light of the recent revision of the Federal Rule of Civil Procedure 15. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926-27 (9th Cir. 2012).

A district court's denial of leave to amend is subject to an abuse of discretion standard of review. *See Telesaursus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). The Court has "an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)). "A district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Id.* (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)).

In this case, Plaintiff's claims against the City of Phoenix and Officer Cortez are barred because of the statute of limitations, the inherent nature of section 1983 claims, and Arizona state law. The Court finds that it is absolutely clear that these bars to Plaintiff's claims cannot be cured by amendment. Any attempt to amend the Complaint would be futile. Accordingly, the Court will not grant Plaintiff leave to amend the claims against the City Defendants.

**V.   CONCLUSION**

Based on the foregoing,

//
//
//
//
//
//
//

1    **IT IS ORDERED** Defendant Cortez's and Defendant City of Phoenix's Motion to
2 Dismiss (Doc. 12) is granted.   Defendant Cortez and Defendant City of Phoenix are
3 dismissed with prejudice.

4    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike the Motion to
5 Dismiss (Doc. 18) is denied.

6    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defendants' reply
7 to Plaintiff's motion to strike (Doc. 27) is denied.

8    Dated this 4th day of September, 2013.

James A. Teilborg
Senior United States District Judge