**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NIKOLAY OTCHKOV,<br><br>        Plaintiff,<br><br>v.<br><br>ALAN EVERETT, in his official and individual capacities as Director of the Arizona Department of Liquor Licenses and Control; Former Director of the Arizona Department of Liquor and Licenses Control JERRY OLIVER Sr., in his official and individual capacities; OSCAR CORTEZ in his official and individual capacities as an officer in the Phoenix Police Department; CITY OF PHOENIX; Attorney JESS LORONA, and the law firm LORONA, DUCAR & STAINER LTD.,<br><br>        Defendants. | No. 12-CV-02042-PHX-JAT<br><br>**ORDER** |

Pending before the Court are *pro se* Plaintiff Nikolay Otchkov's Motion for Default Judgment (Doc. 16) against Defendant Alan Everett ("Everett" or "Defendant"), Everett's Motion to Set Aside Default (Doc. 19), and Everett's Motion to Dismiss (Doc. 33). The Court denies Plaintiff's motion and grants Defendant's motions for the following reasons.

**I.    BACKGROUND**

In 2000, Plaintiff owned and operated a restaurant and sports bar called "Famous Sam's." (Doc. 1 at 3). On June 14, 2007, City of Phoenix officials including Defendant

Cortez and the Phoenix Police Department conducted an inspection of Famous Sam's. (*Id*. at 4). As a result of the inspection, Phoenix Police issued Plaintiff an "Arizona Traffic Ticket and Complaint" for no game center license, operating games of chance, and operating untagged coin operated games. (*Id*.). Plaintiff was allegedly not handcuffed or detained but was read his Miranda rights. (*Id*.). Plaintiff was ordered to appear in the City of Phoenix Municipal Court on June 28, 2007. (*Id*.). Plaintiff appeared in Court but was allegedly told by the court clerk that no complaint had been filed against him and none existed against him in the court file. (*Id*.).

In 2007, Plaintiff changed the name of the restaurant to "Big Nixx." (*Id*. at 3). In January 2008, the Arizona State Liquor Board (the "Board") audited Big Nixx and found multiple violations of Arizona law. (*Id*.). Plaintiff was required to surrender his current liquor license and get a series 6 liquor license. (*Id*.).

To acquire a series 6 license Plaintiff had to enter the Arizona Liquor License Lottery. (*Id*.). On May 4, 2008, Plaintiff was randomly selected in the lottery, which allowed Plaintiff to apply for a series 6 license with the Department of Liquor Licenses and Control ("DLLC"). (*Id*.). To obtain a series 6 license, Plaintiff was required to apply with the DLLC and pay a "nonrefundable fifty percent (50%) deposit of the Fair Market Value" of his series 6 license which was "$55,834.00." (*Id*.). Plaintiff paid the $55,834.00 "nonrefundable deposit" to the DLLC. (*Id*.). Plaintiff claims he was never warned that DLLC would keep his "nonrefundable deposit" in the case his application was disqualified by the Board. (*Id*.). Plaintiff also filed the application with the DLLC. (*Id*. at 4).

In the application, one question asks "Have you ever been detained, cited, arrested, indicted or summoned into court for violation of any law or ordinance?" (Doc. 1-1 at 13). Plaintiff answered the question by saying he was warned in June 2007 for possible game violations. (*Id*.). Another question asks "Have you or an entity in which you have held ownership, been an officer, member, director or manager, ever had a business, professional or liquor application or license rejected, denied, revoked, suspended or fined

1 in this or any other state?" (*Id*.).  In answering the question, Plaintiff failed to disclose
2 some violations and the fine he was assessed for violations. (*Id*.).

3         In July 2008, the Phoenix City Council recommended disapproval of Plaintiff's
4 application for a series 6 license based on information provided by Defendant Cortez and
5 the Phoenix Police Department regarding Plaintiff's past violations.  (Doc. 1 at 4).
6 Plaintiff alleges that Defendant Cortez falsely accused Plaintiff of falsifying his series 6
7 license application. (*Id*.).

8         In order to resolve the issues presented by the Phoenix City Council's
9 recommendation, the Board set a hearing. (*Id*.).  Plaintiff retained assistance of attorney
10 Jerry Lewkowitz for the hearing. (*Id*.).  The hearing was held on December 8, 2008. (*Id*.).

11         On December 8, 2008, Defendant Cortez also allegedly entered Big Nixx and
12 ordered the customers to leave and the bartender to close the restaurant. (*Id*.).

13         On December 19, 2008, the Board denied Plaintiff's application for a series 6
14 liquor license, allegedly solely on the basis of the information provided by Defendant
15 Cortez—that Plaintiff had been arrested before and had falsified his application. (*Id*. at 5).
16 As a result of his application denial, Plaintiff forfeited the $55,834.00 "nonrefundable
17 deposit." (*Id*.).  Plaintiff did not appeal the Board's decision because Lewkowitz advised
18 Plaintiff that an appeal would be futile because the City of Phoenix based its
19 recommendation on Defendant Cortez's information. (*Id*.).

20         Plaintiff contacted Defendant Oliver, the former Director of the Arizona DLLC,
21 and apparently asked for his nonrefundable deposit back.  Oliver refused to return the
22 deposit and advised Plaintiff to seek legal counsel in order to dispute the issue in court.
23 (*Id*.).  In March 2010, Plaintiff hired Defendant Lorona to pursue a claim in an attempt to
24 get the deposit back. (*Id*.).

25         On June 28, 2010, the DLLC sent a letter to Plaintiff signed by Defendant Alan
26 Everett, the Director of the DLLC, re-asserting that the DLLC would not refund the
27 deposit that Plaintiff paid in May 2008 because the deposit was nonrefundable. (Doc. 1-1
28 at 25).  The letter also informed Plaintiff that he had the option to pay the balance of the

1  license fee in the next ninety (90) days even though he could not qualify for the license himself.  (*Id*.).  Plaintiff alleges Defendant Lorona expressed to Plaintiff that this letter was an acknowledgment by the DLLC of wrongful acts and that the letter would be useful inculpatory evidence against the DLLC in a forth coming section 1983 claim.  (Doc. 1 at 5).

In September 2010, Defendant Lorona advised Plaintiff that there may be some preventing Plaintiff from being successful on a claim under section 1983.  (*Id*. at 6).  In December 2010, Plaintiff filed a complaint with another judge in this Court under 42 U.S.C. § 1983 against the State of Arizona, the DLLC, City of Phoenix, and the Police Department.  (Doc. 1-1 at 29-39).  The complaint was eventually dismissed for failure to serve the defendants.  In January 2011, Defendant Lorona and his law firm informed Plaintiff that the firm would no longer represent Plaintiff because Lorona had determined that Plaintiff had no legal claim.  (*Id*.).

Plaintiff alleges he was deceived and betrayed by Lewkowitz and Defendant Lorona because they allegedly acted in favor of the DLLC and the City of Phoenix.  (*Id*.).  On June 16, 2011, Plaintiff sent a letter to Everett which was referred to the Arizona Department of Administration Risk Management Division (the "Department").  (Doc. 1-1 at 41).  The Department sent a letter back to Plaintiff on September 27, 2011, denying the claims Plaintiff presented and explaining that an investigation into Plaintiff's application denial had revealed that Plaintiff's application was handled and processed in accordance with established procedures and Arizona law.  (*Id*.).

On September 26, 2012, Plaintiff filed a complaint (the "Complaint") in this Court alleging five counts against Alan Everett, Director of the Arizona DLLC, Jerry Oliver Sr., former Director of the Arizona DLLC, Oscar Cortez of the Phoenix Police Department, the City of Phoenix, and Attorney Jess Lorona, and the law firm Lorona, Ducar & Stainer Ltd.  (Doc. 1).

Kay Hughes at the Arizona DLLC was served with the Complaint for Everett on November 2, 2012.  (Doc. 4).  On December 5, 2012, Plaintiff filed a motion for entry of

1 default against Everett for failing to respond to the Complaint. (Doc. 14). Pursuant to Federal Rule of Civil Procedure 55(a), the Clerk of the Court entered default against Everett on December 7, 2012. (Doc. 15). On December 10, 2012, Plaintiff filed the pending Motion for Default Judgment against Everett (Doc. 16). The next day, Everett filed the pending Motion to Set Aside Default ("Motion to Set Aside") (Doc. 19). Plaintiff then filed a Response to Everett's Motion to Set Aside (Doc. 22) and Everett filed a Reply to Plaintiff's Response (Doc. 26).

Following these motions regarding default, Plaintiff personally served Everett on January 17, 2013. (Doc. 32). On February 7, 2013, Everett filed the pending Motion to Dismiss (Doc. 33) and Plaintiff filed a Response to the Motion to Dismiss (Doc. 34).

## II.    DEFAULT

Subsequent to the Court's entry of default against Everett, Plaintiff has now asked the Court to enter default judgment against Everett under Federal Rule of Civil Procedure 55(b). (Doc. 16). Everett has asked the Court to set aside the Clerk of the Court's entry of default against him under Rule 55(c). (Doc. 19). Everett argues that the Court should set aside the entry of default because Everett was improperly served under Rule 4(e) and for good cause. (*Id.* at 5-8).

The Court finds Everett has shown good cause to set aside the entry of default and need not address Everett's argument regarding service under Rule 4(e). The Ninth Circuit Court of Appeals "has emphasized that [default] judgments are 'appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds*, *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147–50 (2001) (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam)). "The court may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). "To determine 'good cause', a court must 'consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [the party] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice'

the other party." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (citation omitted); *see also TCI Group*, 244 F.3d at 696. "This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id*. However,

> "[w]hile the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context," such as we consider here. *Cracco v. Vitran Exp., Inc*., 559 F.3d 625, 631 (7th Cir. 2009) (quotations and citations omitted). This is because in the Rule 55 context there is no interest in the finality of the judgment with which to contend. *See Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986).

*Id*. at 1091 n. 1.

In this case, first, Everett's conduct was not culpable. "[A] defendant's conduct is culpable if [he] has received . . . notice of the filing of the action and *intentionally* failed to answer." *TCI Group*, 244 F.3d at 697–98 (emphasis in original) (citation omitted). "[I]n this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Signed Pers. Check No. 730*, 615 F.3d at 1092 (quoting *TCI Group*, 244 F.3d at 697).

Everett argues that his conduct was not culpable because he did not act in bad faith. (Doc. 19 at 8); (Doc. 26 at 4). Everett contends that service was not proper under Federal Rule of Civil Procedure 4 because Everett did not waive service under Rule 4(d), he was not served personally, nor did he authorize anyone to accept service on his behalf—service was effectuated upon Kay Hughes at the offices of the Arizona DLLC. "Without personal service in accordance with Rule 4, the district court is without

jurisdiction to render a personal judgment against a defendant." *Hutchinson v. United States*, 677 F.2d 1322, 1328 (9th Cir. 1982) (upholding dismissal of declaratory judgment for want of jurisdiction for improper service). Because he was not properly served, Everett "made a conscious choice not to answer." *Signed Pers. Check No. 730*, 615 F.3d at 1092. The Court of Appeals has determined that he "cannot be treated as culpable simply" for this. *Id*. There is no evidence that Everett "inten[ded] to take advantage of the opposing party, interfere[d] with judicial decisionmaking, or otherwise manipulate[d] the legal process." *Id*. Accordingly, there is no evidence that Everett acted in bad faith and his conduct was not culpable.

Second, Everett has a meritorious defense. "A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But [even] the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *TCI Group*, 244 F.3d at 700 (citations omitted). To show he has a meritorious defense all a "defendant must [do is] state a defense good at law which is sufficient if it contains even a hint of a suggestion which, proven at trial, would constitute a complete defense." *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996) (quotations and citation omitted).

In this case, Everett contends that the claims against him are barred because Plaintiff has failed to state any claims against him upon which relief can be granted. (Doc. 19 at 7). As explained below, *see infra* Section III, Plaintiff's claims are in fact barred because Everett is entitled to qualified immunity. Accordingly, Everett has shown he has a meritorious defense justifying his Motion to Set Aside.

Finally, Plaintiff will not be prejudiced by allowing the case he filed to move forward. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" *TCI Group*, 244 F.3d at 701 (quoting *Falk*, 739 F.2d at 463); *Thompson*, 95 F.3d at 433-34 (to be considered prejudicial, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery,

1 or greater opportunity for fraud or collusion"). Everett has sufficiently explained that Plaintiff would not be prejudiced by setting aside the entry of default and Plaintiff has not addressed this issue in responding to Everett's Motion to Set Aside.

Accordingly, the Court will deny Plaintiff's Motion for Default and grant Everett's Motion to Set Aside the entry of default.

**III.    DEFENDANT'S MOTION TO DISMISS (Doc. 33)**

Next, Everett has moved for the Court to dismiss the claims in Plaintiff's Complaint against him 1) because the claims are barred by the statute of limitations, 2) because the claims fail to state claims upon which relief can be granted, and 3) because Everett is entitled to qualified immunity. (Doc. 33 at 1). In the Complaint, Plaintiff has made three claims against Everett: a claim under 42 U.S.C. § 1983 in Count One for "conspiracy" with other defendants to deprive Plaintiff of "property and privilege" without "due process of law" in violation of the "Fourteenth Amendment to the Constitution" (Doc. 1 at 6-7); that Everett is liable again in Count Three under section 1983 for "conspiracy" with other defendants to deprive Plaintiff "of property and privileges through deception and fraud . . . in violation of [the] First, Fourth and Fourteenth Amendments" (*id.* at 8); and that Everett and other defendants are liable in Count Five under State law for the tort of intentional infliction of emotional distress (*id.* at 9-10). As the Court finds the resolution of the immunity issue to be dispositive in this case, the Court will not address the other issues raised by Everett.

Plaintiff has sued Everett in both his official and personal capacities. Everett contends that as the Director of the Arizona DLLC he cannot be held liable for actions undertaken in his official capacity under section 1983 and that he is entitled to qualified immunity for the claims made against him in his personal capacity. (Doc. 33 at 7-8).

**A.    Official Capacity**

Under section 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

- 8 -

> District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. However, the United States Supreme Court has explicitly held "that neither a State nor its officials acting in their official capacities are "persons" under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Supreme Court explained, "[o]bviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id*. (citations omitted). "The Eleventh Amendment bars [section 1983] suits [against the State] unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity. [ ] Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity." *Id*. at 66.

In this case, Everett is a state official acting in his official capacity as the Director of the Arizona DLLC. Accordingly, Counts One and Three made in the Complaint against him in his official capacity under section 1983 must be dismissed.

**B. Individual Capacity**

"When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses." *DeNieva v. Reyes*, 966 F.2d 480, 484 (9th Cir. 1992) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

> Under § 1983 . . . , a plaintiff may seek money damages from government officials who have violated h[is] constitutional or statutory rights. But to ensure that fear of liability will not "unduly inhibit officials in the discharge of their duties," *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the officials may claim qualified

> immunity; so long as they have not violated a "clearly established" right, they are shielded from personal liability, *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). That means a court can often avoid ruling on the plaintiff's claim that a particular right exists. If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages. The court need never decide whether the plaintiff's claim, even though novel or otherwise unsettled, in fact has merit.

*Camreta v. Greene*, 131 S. Ct. 2020, 2030-31 (2011). Qualified immunity is "an immunity from suit rather than a mere defense to liability . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

A defendant in a section 1983 action is entitled to qualified immunity from damages for civil liability if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. "Thus, in order to determine whether qualified immunity protects a government official, a court must decide, first, whether a plaintiff has produced evidence showing that the official violated a constitutional right and, second, whether that right was 'clearly established' at the time of the alleged misconduct." *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012) (quoting *Pearson*, 555 U.S. at 232). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Under the second prong, "[t]o determine whether a constitutional right has been clearly established for qualified immunity purposes, we must survey the legal landscape and examine those cases that are most like the instant case. The inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition."

*Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010) (quotations and citations omitted). A right is clearly established when "in the light of pre-existing law the unlawfulness . . . [is] apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

In this case, the Complaint alleges that Plaintiff paid an admittedly "nonrefundable deposit" of "$55,834" in order to apply for his series 6 liquor license (Doc. 1 at 3 ¶¶ 19-21); that Plaintiff was denied this license by the Board (*id*. at ¶33); that Everett sent Plaintiff a letter in response to a letter from Plaintiff demanding the non-refundable deposit be refunded, giving Plaintiff an additional 90 days to pay the balance of the license fee (*id*. at ¶43); that Plaintiff believed this letter acknowledged a wrongful act on the part of the Everett (*id*. at ¶44); that Plaintiff's hired attorney determined that Plaintiff had no legal claim against Everett (*id*. at ¶49); and that Plaintiff received a letter from the Arizona Department of Administration in response to another letter that Plaintiff sent to Everett, denying Plaintiff's claim and informing Plaintiff that the DLLC had acted appropriately (*id*. at ¶52). Plaintiff's two claims against Everett under section 1983 invoke the due process clause of the Fourteenth Amendment in Count One alleging Everett participated in a conspiracy to deprive Plaintiff of property and privilege (Doc. 1 at 7 ¶57), and invoke the First, Fourth, and Fourteenth Amendments in Count Three alleging again that Everett participated in a conspiracy to deprive Plaintiff of property and privilege (*id*. at 8 ¶69).

Given the Complaint, Plaintiff has not identified nor has the Court found a single case that is similar to the instant case and establishes, much less clearly establishes, that the DLLC's denial to refund Plaintiff's "non-refundable deposit" was a constitutional violation. Plaintiff merely makes the conclusory statement that "Everett acted intentionally, he knew and had reason to know that his conduct was unlawful in violating Otchkov's clearly established rights that a reasonable officer would have known." (Doc. 34 at 17). Plaintiff makes no argument for how he had a clearly established right to the non-refundable deposit under the circumstances and how not returning the non-refundable deposit violated the First, Fourth, or Fourteenth Amendments. The Court finds that the

1 contours of the rights Plaintiff asserts were not sufficiently clear that a reasonable official would think that denying Plaintiff's request to return the non-refundable deposit violated the Constitution. Accordingly, Everett is entitled to qualified immunity on Plaintiff's federal claims in Counts One and Three.

### C. Immunity from State law Tort Claim

The only remaining claim against Everett is Count Five of the Complaint. Because Plaintiff's claim in Count Five is a state law tort claim and the claim is only before the Court on the basis of supplemental jurisdiction, the Court must apply Arizona substantive law. *Mason and Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011) ("When a district court sits in diversity, or hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims."). Thus, whether Everett is immune from Plaintiff's Arizona tort law claim in Count Five is a question of Arizona law. *Davis v. Spier*, CV-08-00050-PHX-NVW, 2008 WL 1746165, at *4 (D. Ariz. Apr. 14, 2008) (citing *Martinez v. California*, 444 U.S. 277, 282 n. 5 (1980) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law.")). Federal courts must follow the decisions of a state's highest court when deciding issues of that state's law. *Harvey's Wagon Wheel, Inc. v. Van Blitter*, 959 F.2d 153, 154 (9th Cir. 1992).

The Arizona Supreme Court has held that qualified immunity protects only those acts done in good faith. *Chamberlain v. Mathis*, 729 P.2d 905, 908 (Ariz. 1986). Further, "[b]oth qualified and absolute immunity protect only acts reasonably within the employee's discretionary authority." *Id*. at 909. "Qualified immunity protects government officials from liability for acts within the scope of their public duties unless the official knew or should have known that he was acting in violation of established law or acted in reckless disregard of whether his activities would deprive another person of their rights." *Id*. at 912.

Turning to established law regarding a claim of intentional infliction of emotional

distress ("IIED"), "[i]t is the duty of the court as society's conscience to determine whether the acts complained of can be considered sufficiently extreme and outrageous to state a claim for relief." *Patton v. First Fed. Sav. & Loan Ass'n of Phx.*, 578 P.2d 152, 155 (Ariz. 1978) (in banc) (citation omitted); *see also Lucchesi v. Stimmell*, 716 P.2d 1013, 1016 (Ariz. 1986) ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so."). To recover for this tort, the plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff v. Farmers Ins. Exchange*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969) (quoting Restatement (Second) of Torts § 46 cmt. d). The elements of a cause of action for IIED are:

> [F]irst the conduct by the defendant must be "extreme" and "outrageous"; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct.

*Johnson v. McDonald*, 3 P.3d 1075, 1080 ¶23 (Ariz. Ct. App. 1999) (quoting *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)). Given the nature of IIED and an IIED claim, if a defendant's alleged conduct is sufficiently outrageous to state a claim for IIED, then the conduct would almost invariably disqualify a defendant from qualified immunity. Sufficiently outrageous conduct would compel a court to find a defendant would have known or should have known that by engaging in such conduct that he was acting in reckless disregard of whether his activities would deprive a claimant of their rights, and if he should have known this, he is not entitled to qualified immunity.

In this case, Plaintiff has failed to allege facts sufficient to show that Everett knew or should have known that merely denying Plaintiff's request to return the non-refundable deposit was so extreme in degree as to go beyond all possible bounds of decency, and would be regarded as atrocious and utterly intolerable in a civilized community. Plaintiff

admits he knew he was submitting a "nonrefundable deposit" when he applied for his series 6 liquor license. Plaintiff merely claims he did not understand what "nonrefundable" meant. Further, Plaintiff has alleged only minimal facts regarding Everett. Plaintiff sent Everett a letter requesting that Everett refund the non-refundable deposit. Everett merely sent Plaintiff a letter back reiterating that the DLLC will not issue a refund of the nonrefundable deposit. Evidently Plaintiff sent another letter to Everett on June 16, 2011, which was forwarded to the Arizona Department of Administration Risk Management Division. The Department completed an investigation into the facts surrounding Plaintiff's application and sent Plaintiff another letter on September 27, 2011, informing him that the Department determined that Plaintiff's application was handled and processed in accordance with established procedures and Arizona law. No additional facts even remotely implicate Everett. Plaintiff merely alleges Everett intentionally and willfully inflicted emotional distress on Plaintiff. Everett's actions in sending Plaintiff a letter back and referring Plaintiff's second letter to the Department were discretionary actions and within the scope of his public duties. Nothing about Everett's conduct, however, could be construed to reach the level required to allow Plaintiff to recover for IIED under Arizona law. Accordingly, Everett is entitled to qualified immunity as a government official on Plaintiff's state law tort claim in Count Five.

**D.     Defendant Jerry Oliver Sr., Former Director of the Arizona DLLC**

Further, while Defendant Oliver has not filed a motion to dismiss nor a responsive pleading to Plaintiff's Complaint, the Court will dismiss Defendant Oliver from this case for the same reasons that Everett will be dismissed. *Abigninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 743 (9th Cir. 2008) ("A [d]istrict [c]ourt may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants."). First, Defendant Oliver was not served with the Complaint. Second, Defendant Oliver, as the former Director of the Arizona DLLC, is in a similar position to Everett and Plaintiff's claims against Defendant Oliver are no more valid under Federal Rule of Civil Procedure 12(b) than Plaintiff's

1  allegations against Everett.

## IV. LEAVE TO AMEND

The Court will not grant Plaintiff leave to amend the Complaint with regard to Defendant Everett and Defendant Oliver. Plaintiff has not amended nor sought leave to amend his Complaint as a matter of right under Rule 15 of the Federal Rules of Civil Procedure. Because the twenty-one day time frame to file an amendment following a motion to dismiss has expired, Plaintiff has lost his right to amend the Complaint as a matter of course. Fed. R. Civ. P. 15(a)(1). While previous precedent from the Ninth Circuit Court of Appeals instructed that district courts should grant leave to amend *sua sponte* when granting a motion to dismiss, the Court of Appeals has recently called that precedent into question in light of the recent revision of the Federal Rule of Civil Procedure 15. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926-27 (9th Cir. 2012).

A district court's denial of leave to amend is subject to an abuse of discretion standard of review. *See Telesaursus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). The Court has "an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)). "A district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Id.* (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)).

In this case, Plaintiff's claims against Everett and Oliver are barred because of immunity. The Court finds that it is absolutely clear that this bar to Plaintiff's claims against Everett and Oliver cannot be cured by amendment. Accordingly, any attempt to amend the Complaint would be futile.

## V. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment against Defendant

1 | Alan Everett (Doc. 16) is denied.

2 | **IT IS FURTHER ORDERED** that Defendant Alan Everett's Motion to Set Aside
3 | Default (Doc. 19) is granted.

4 | **IT IS FURTHER ORDERED** that Defendant Alan Everett's Motion to Dismiss
5 | (Doc. 33) is granted.  Defendant Alan Everett is dismissed from this case with prejudice.

6 | **IT IS FINALLY ORDERED** that the Clerk of the Court shall dismiss Defendant
7 | Jerry Oliver Sr. from this case with prejudice.

8 | Dated this 4th day of September, 2013.

James A. Teilborg
Senior United States District Judge