**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NIKOLAY OTCHKOV,<br><br>  Plaintiff,<br><br>v.<br><br>ALAN EVERETT, in his official and individual capacities as Director of the Arizona Department of Liquor Licenses and Control; Former Director of the Arizona Department of Liquor and Licenses Control JERRY OLIVER Sr., in his official and individual capacities; OSCAR CORTEZ in his official and individual capacities as an officer in the Phoenix Police Department; CITY OF PHOENIX; Attorney JESS LORONA, and the law firm LORONA, DUCAR & STAINER LTD.,<br><br>  Defendants. | No. 12-CV-02042-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Defendant Jess Lorona's and Lorona, Ducar & Stainer's (collectively "Lorona" or "Defendants") Motion to Dismiss (Doc. 13) and *pro se* Plaintiff Nikolay Otchkov's Motion to Strike the Motion to Dismiss (Doc. 17). The Court grants Defendants' motion and denies Plaintiff's motion for the following reasons.

**I.   BACKGROUND**

In 2000, Plaintiff opened and began operating a restaurant and sports bar called "Famous Sam's." (Doc. 1 at 3). On June 14, 2007, City of Phoenix officials, including Defendant Cortez of the Phoenix Police Department, conducted an inspection of Famous

1  Sam's. (*Id.* at 4). As a result of the inspection, the Phoenix Police Department issued
2  Plaintiff an "Arizona Traffic Ticket and Complaint" for no game center license, operating
3  games of chance, and operating untagged coin operated games. (*Id.*). Plaintiff was
4  allegedly not handcuffed or detained but was read his Miranda rights. (*Id.*). Plaintiff was
5  ordered to appear in the City of Phoenix Municipal Court on June 28, 2007. (*Id.*).
6  Plaintiff appeared in Court but was allegedly told by the court clerk that no complaint had
7  been filed against him and none existed against him in the court file. (*Id.*).

8  In 2007, Plaintiff changed the name of the restaurant to "Big Nixx." (*Id.* at 3).
9  In January 2008, the Arizona State Liquor Board (the "Board") audited Big Nixx and
10 found multiple violations of Arizona law. (*Id.*). Plaintiff was required to surrender his
11 current liquor license and acquire a series 6 liquor license. (*Id.*). In front of Phoenix City
12 Hall, on January 24, 2008, Defendant Cortez allegedly told Plaintiff something like, "You
13 Bulgarians never gonna learn to obey laws and that is why you never gonna get a license
14 in this City." (*Id.*).

15 To acquire a series 6 license Plaintiff had to enter the Arizona Liquor License
16 Lottery. (*Id.*). On May 4, 2008, Plaintiff was randomly selected in the lottery, which
17 allowed Plaintiff to apply for a series 6 license with the Department of Liquor Licenses
18 and Control ("DLLC"). (*Id.*). To obtain a series 6 license, Plaintiff was required to apply
19 with the DLLC and pay a "nonrefundable fifty percent (50%) deposit of the Fair Market
20 Value" of his series 6 license which was "$55,834.00." (*Id.*). Plaintiff paid the
21 $55,834.00 "nonrefundable deposit" to the DLLC. (*Id.*). Plaintiff claims he was never
22 warned that DLLC would keep his "nonrefundable deposit" in the case his application was
23 disqualified by the Board. (*Id.*). Plaintiff also filed the application with the DLLC. (*Id.* at
24 4).

25 In the application, one question asks "Have you ever been detained, cited, arrested,
26 indicted or summoned into court for violation of any law or ordinance?" (Doc. 1-1 at 13).
27 Plaintiff answered the question by saying he was warned in June 2007 for possible game
28 violations. (*Id.*). Another question asks "Have you or an entity in which you have held

ownership, been an officer, member, director or manager, ever had a business, professional or liquor application or license rejected, denied, revoked, suspended or fined in this or any other state?" (*Id*.). In answering the question, Plaintiff failed to disclose some violations and the fine he was assessed for violations. (*Id*.).

In July 2008, the Phoenix City Council recommended disapproval of Plaintiff's application for a series 6 license based on information provided by Defendant Cortez and the Phoenix Police Department regarding Plaintiff's past violations. (Doc. 1 at 4). Plaintiff alleges that Defendant Cortez falsely accused Plaintiff of falsifying his series 6 license application. (*Id*.).

In order to resolve the issues presented by the Phoenix City Council's recommendation, the Board set a hearing. (*Id*.). Plaintiff retained assistance of attorney Jerry Lewkowitz for the hearing. (*Id*.). The hearing was held on December 8, 2008. (*Id*.).

On December 8, 2008, Defendant Cortez also allegedly entered Big Nixx and ordered the customers to leave and the bartender to close the restaurant. (*Id*.).

On December 19, 2008, the Board denied Plaintiff's application for a series 6 liquor license, allegedly solely on the basis of the information provided by Defendant Cortez—that Plaintiff had been arrested before and had falsified his application. (*Id*. at 5). As a result of his application denial, Plaintiff forfeited the $55,834.00 "nonrefundable deposit." (*Id*.). Plaintiff did not appeal the Board's decision because Lewkowitz advised Plaintiff that an appeal would be futile because the City of Phoenix based its recommendation on Defendant Cortez's information. (*Id*.).

Plaintiff contacted Defendant Oliver, the former director of the Arizona DLLC, and apparently asked for his nonrefundable deposit back. Oliver refused to return the deposit and advised Plaintiff to seek legal counsel in order to dispute the issue in court. (*Id*.). In March 2010, Plaintiff hired Defendant Lorona to pursue a claim in an attempt to get the deposit back. (*Id*.).

On June 28, 2010, the DLLC sent a letter to Plaintiff signed by Defendant Alan Everett, the Director of the DLLC, re-asserting that the DLLC would not refund the

1  deposit that Plaintiff paid in May 2008 because the deposit was nonrefundable (Doc. 1-1
2  at 25). The letter also informed Plaintiff that he had the option to pay the remaining fee
3  owed on the license in the next ninety days even though he could not qualify for the
4  license himself. (*Id*.). Plaintiff alleges Defendant Lorona expressed to Plaintiff that this
5  letter was an acknowledgment by the DLLC of wrongful acts and that the letter would be
6  useful inculpatory evidence against the DLLC in a forth coming section 1983 claim.
7  (Doc. 1 at 5). Lorona also advised Plaintiff not to pay the remainder of the license fee.
8  (*Id*.).

9  In September 2010, Defendant Lorona advised Plaintiff that there may be some
10 issues preventing Plaintiff from being successful on a claim under section 1983. (*Id*. at 6).
11 Nevertheless, Lorona still sent a letter to Everett and the DLLC demanding return of
12 Plaintiff's nonrefundable deposit. (*Id*.). In December 2010, Plaintiff filed a complaint
13 with another judge in this Court under 42 U.S.C. § 1983 against the State of Arizona, the
14 DLLC, City of Phoenix, and the Police Department. (Doc. 1-1 at 29-39). The complaint
15 was eventually dismissed for failure to serve the defendants. In January 2011, Defendant
16 Lorona and his law firm informed Plaintiff that the firm would no longer represent
17 Plaintiff because Lorona had determined that Plaintiff had no legal claim. (*Id*.).

18 Plaintiff alleges he was deceived and betrayed by Lewkowitz and Defendant
19 Lorona because they allegedly acted in favor of the DLLC and the City of Phoenix. (*Id*.).
20 On June 16, 2011, Plaintiff sent a letter to Defendant Everett which was referred to the
21 Arizona Department of Administration Risk Management Division. (Doc. 1-1 at 41). The
22 Department sent a letter back to Plaintiff on September 27, 2011, denying the claims
23 Plaintiff presented and explaining that an investigation into Plaintiff's application denial
24 had revealed that Plaintiff's application was handled and processed in accordance with
25 established procedures and Arizona law. (*Id*.).

26 On September 26, 2012, Plaintiff filed a complaint (the "Complaint") in this Court
27 alleging five counts against Alan Everett, Director of the Arizona DLLC, Jerry Oliver Sr.,
28 former Director of the Arizona DLLC, Oscar Cortez of the Phoenix Police Department,

the City of Phoenix, and Attorney Jess Lorona, and the law firm Lorona, Ducar & Stainer Ltd. (Doc. 1).

On November 26, 2012, Lorona filed the pending Motion to Dismiss (Doc. 13). In response, Plaintiff filed the pending Motion to Strike the Motion to Dismiss ("Motion to Strike") on December 10, 2012 (Doc. 17). Lorona then filed a Response to Plaintiff's Motion to Strike (Doc. 21) and Plaintiff filed a Reply to Lorona's Response to the Motion to Strike (Doc. 24).

## II.     MOTION TO STRIKE

As an initial matter, the Court will address and deny Plaintiff's motion to strike. Plaintiff has raised no valid reason to strike Defendants' Motion to Dismiss. It appears to the Court that Plaintiff believes that the Motion to Dismiss deviates from the Rule 16 Scheduling Order. (Doc. 17 at 1). The Motion to Dismiss was filed in accordance with both Federal and Local Rules of Civil Procedure. Accordingly, the Court will deny Plaintiff's motion to strike and consider all arguments made for and against Defendants' Motion to Dismiss.

## III.    MOTION TO DISMISS

Defendants argue that the Court should dismiss Plaintiff's Complaint against them because it fails to state a claim upon which relief can be granted. The Court may dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) for two reasons: 1) lack of a cognizable legal theory or 2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)).

To survive a 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id*. (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1202, pp. 94-95 (3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

Plaintiff has alleged three claims against Lorona and has not specified which claims, if any apply to the law firm of Lorona, Ducar, & Stainer. Plaintiff's claims against Lorona include: a claim under 42 U.S.C. § 1983 in Count One for "conspiracy" with other defendants to deprive Plaintiff of "property and privilege" without "due process of law" in violation of the "Fourteenth Amendment to the Constitution" (Doc. 1 at 6-7); that Lorona

is liable again in Count Three under section 1983 for "conspiracy" with other defendants to deprive Plaintiff "of property and privileges through deception and fraud . . . in violation of [the] First, Fourth and Fourteenth Amendments" (*id*. at 8); and that Lorona and other defendants are liable in Count Five under State law for the tort of intentional infliction of emotional distress (*id*. at 9-10).

### A. Counts One and Three

Counts One and Three are both conspiracy claims under section 1983 to deprive Plaintiff of property. Section 1983 requires the violation of a constitutional right and a showing that a defendant acting under color of state law committed the deprivation. *See West v. Atkins*, 487 U.S. 42, 48 (1988). A private person acts "under color of" state law when involved in a conspiracy with state officials to deprive someone of federal rights. *See Tower v. Glover*, 467 U.S. 914, 920 (1984). Plaintiff merely alleges "[a]t all times relevant herein, the defendants were state actors and their conduct was subject to 42 U.S.C. secs. 1983." (Doc. 1 at 7). Assuming, *arguendo*, this conclusory statement is enough to establish that Lorona acted under color of state law, the Court still finds Plaintiff has failed to allege a sufficient conspiracy claim.

"To state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. Cnty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citing *Coverdell v. Dept. of Soc. and Health Servs.*, 834 F.2d 758, 769 (9th Cir.1987)). In *Olsen v. Idaho State Board of Medicine*, the plaintiff made a conspiracy claim against defendants. The district court held that plaintiff's "complaint lacks any facts specific to a conspiracy and the claim will be dismissed for failure to state a claim." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004). The plaintiff appealed to the Ninth Circuit Court of Appeals and asserted that her complaint provided sufficient evidence of conspiracy by setting forth numerous allegations concerning defendants' conduct. *Id*. The Court of Appeals upheld the district court's dismissal and found it dispositive that, "[i]n fact, [plaintiff's] complaint is devoid of any discussion of an agreement amongst the appellees

1  to violate her constitutional rights." *Id.*

2  By way of contrast, in *Goodrick v. Clegg* the Court of Appeals overturned the
3  district court's dismissal of a plaintiff's conspiracy claim because the complaint alleged
4  facts showing an agreement had been made.  210 F.3d 382, at *2 (9th Cir. 2000).  The
5  Court of Appeals found that because the complaint stated that defendants "acted together
6  to promulgate a policy that violated the rights of the inmates at the jail" that "[t]he facts
7  appear to constitute 'specific facts to support the existence of the claimed conspiracy.'"
8  *Id.* (quoting *Burns*, 883 F.2d at 821).

9  Similar to the claim in *Olsen* and unlike the complaint in *Goodrick*, in this case
10 Plaintiff has failed to plead facts showing any agreement between the Defendants to
11 violate Plaintiff's constitutional rights.  Plaintiff merely states in Count One that "[a]s a
12 direct result of Defendants' concerted unlawful and malicious conspiracy, Plaintiff
13 suffered property and privilege deprivation, and he was deprived of his right to due
14 process . . ." (Doc. 1 at 7).  Count Three is no more specific; Plaintiff states "[a]s a direct
15 result of their concerted unlawful and malicious conspiracy of Defendants . . . Plaintiff
16 was deprived of property and privileges . . ." (*Id.* at 8).  The remainder of Plaintiff's
17 Complaint alleges no specific agreement, policy, or coordinated effort by Defendants to
18 do anything to Plaintiff.  Accordingly, Plaintiff has failed to offer anything more than
19 naked assertions and has not made his claims plausible.  Therefore, the Court will grant
20 Defendants' Motion to Dismiss Counts One and Three.

21 **B.     Count Five**

22 In Count Five, Plaintiff claims Lorona "intentionally and willfully inflicted [ ]
23 emotional distress on Plaintiff by abusing the lawful process by unlawful purpose, or by
24 violating Plaintiff's constitutional rights." (Doc. 1 at 9 ¶76).  Because Plaintiff's claim in
25 Count Five is a state law tort claim and the claim is only before the Court on the basis of
26 supplemental jurisdiction, the Court must apply Arizona substantive law.  *Mason and*
27 *Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011)
28 ("When a district court sits in diversity, or hears state law claims based on supplemental

1 jurisdiction, the court applies state substantive law to the state law claims."). Plaintiff "may recover for [intentional infliction of emotional distress ("IIED")] only where the defendant's acts are 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 578 P.2d 152, 155 (Ariz. 1978) (in banc) (quoting *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. Ct. App. 1969)); Restatement (Second) of Torts § 46 cmt. d.. The elements of a cause of action for IIED are:

> [F]irst the conduct by the defendant must be "extreme" and "outrageous"; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct.

*Johnson v. McDonald*, 3 P.3d 1075, 1080 ¶23 (Ariz. Ct. App. 1999) (quoting *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987)). "It is the duty of the court as society's conscience to determine whether the acts complained of can be considered sufficiently extreme and outrageous to state a claim for relief." *Patton*, 578 P.2d at 155 (citation omitted); *see also Lucchesi v. Stimmell*, 716 P.2d 1013, 1016 (Ariz. 1986) ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so.").

In this case, Plaintiff has failed to allege facts sufficient to state an IIED claim against Lorona. First, Plaintiff's allegations against Lorona do not show extreme or outrageous conduct. Plaintiff merely alleges in the Complaint that Lorona advised Plaintiff not to pay the remainder of the license fee addressed in Everett's letter; that Lorona then determined that there were issues that could prevent the success of Plaintiff's section 1983 claim; that Lorona took action on behalf of Plaintiff and sent a letter to the DLLC demanding return of Plaintiff's nonrefundable deposit; that Lorona filed an insufficient complaint predisposed for failure without serving defendants; and that Lorona

1 informed Plaintiff that he would no longer be able to represent Plaintiff because Lorona
2 had determined that Plaintiff had no legal claim. (Doc. 1 at 5-6).  Plaintiff has not cited a
3 single example of similar conduct that meets the "extreme" or "outrageous conduct"
4 threshold.  Further, the Court has not found an example of comparable conduct that would
5 lead the Court to conclude that the allegations against Lorona are sufficient to state an
6 IIED claim.

7 Second, Plaintiff has made no factual allegation that Lorona intended to cause
8 emotional distress or recklessly disregarded the results of his actions.  Accordingly, the
9 Court finds Plaintiff has failed to state a claim for IIED upon which relief can be granted.
10 Therefore, the Court will dismiss Count Five against Lorona as well.

## IV.    LEAVE TO AMEND

In this case, Plaintiff has not amended nor sought leave to amend his Complaint as a matter of right under Rule 15 of the Federal Rules of Civil Procedure.  Because the twenty-one day time frame to file an amendment following a motion to dismiss has expired, Plaintiff has lost his right to amend the Complaint as a matter of course. Fed. R. Civ. P. 15(a)(1).  While previous precedent from the Ninth Circuit Court of Appeals instructed that district courts should grant leave to amend *sua sponte* when granting a motion to dismiss, the Court of Appeals has recently called that precedent into question in light of the recent revision of the Federal Rule of Civil Procedure 15.  *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926-27 (9th Cir. 2012).  The Court of Appeals has also held that "[a] district court should not dismiss a *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203–04 (9th Cir. 1988) (per curiam)).

In this case, Plaintiff's claims against Lorona are dismissed for failure to state a claim upon which relief can be granted.  While the Court finds it unlikely, it is not absolutely clear to the Court that the deficiencies of Plaintiff's claims against Lorona could not be cured by amendment and substantial additional facts.  Accordingly, because

1  the Court has "an obligation where the petitioner is *pro se* . . . to construe the pleadings
2  liberally and to afford the petitioner the benefit of any doubt," *Akhtar*, 698 F.3d at 1212,
3  the Court will grant Plaintiff leave to amend the Complaint with regard to the claims
4  against Defendant Lorona only.

5  Plaintiff is reminded that the Court will only consider the amended complaint as
6  the operative pleading. An amended complaint must stand on its own. The Court will not
7  incorporate by reference any exhibits, factual allegations, or legal claims made in prior
8  versions of the complaint. *See LRCiv 15.1* ("The proposed amended pleading is not to
9  incorporate by reference any part of the preceding pleading, including exhibits"). Plaintiff
10 is forewarned that if he elects to file an amended complaint and it fails to comply with the
11 Court's instructions or case law explained in this order, the action will be dismissed with
12 prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. *See McHenry v.*
13 *Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996) (affirming dismissal with prejudice of prolix,
14 argumentative, and redundant amended complaint that did not comply with Rule 8(a));
15 *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673–74 (9th Cir. 1981) (affirming
16 dismissal of amended complaint that was "equally as verbose, confusing, and conclusory
17 as the initial complaint"); *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir. 1965) (affirming
18 dismissal without leave to amend of second complaint that was "so verbose, confused and
19 redundant that its true substance, if any, [was] well disguised").

20 **V.   CONCLUSION**
21      Based on the foregoing,
22 //
23 //
24 //
25 //
26 //
27 //
28 //

1     **IT IS ORDERED** that Defendant Lorona's and the law firm of Lorona, Ducar, & Stainer's Motion to Dismiss (Doc. 13) is granted. Plaintiff may file an amended complaint against Defendant Lorona within twenty-one (21) days from the date of this order; if Plaintiff fails to file an amended complaint within this deadline, the Clerk of the Court shall enter judgment, dismissing this case with prejudice.

    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike the Motion to Dismiss (Doc. 17) is denied.

    Dated this 4th day of September, 2013.

James A. Teilborg
Senior United States District Judge